```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

JAMES P. PURCELL,              }
                               }
      Plaintiff,               }
                               }        CIVIL ACTION NO.
v.                             }        07-AR-0787-S
                               }
CAROTEK, INC.,                 }
                               }
      Defendant.               }
```

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Carotek, Inc. ("Carotek"), for summary judgment in the above-entitled action. Plaintiff, James P. Purcell ("Purcell"), invoking the diversity jurisdiction of this court under 28 U.S.C. § 1332, brings a variety of state law claims against Carotek. For the reasons that follow, Carotek's motion will be granted. From hindsight, the court could have found a lack of the $75,000 in controversy necessary for subject matter jurisdiction under § 1332.

*Summary Judgment Facts[1]*

Purcell was employed with Carotek from October 2002 to April 2005 as a sales representative. Carotek is a North Carolina company that provides electronic and mechanical equipment and

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

1

services for business/institutional use. Purcell's claims primarily arise out of a variety of changes to the terms of his employment. He also alleges that Carotek interfered with one of his business relationships after he left the company. The court will summarize the relevant facts as they relate to Purcell's claims.

*Health Insurance and 401(k)*

In the fall of 2003, Carotek changed its health insurance provider from Primary Physician Care to Cigna Health Care. Purcell was covered under the Primary Physician Care plan until Carotek switched providers. At the time of the change, Purcell was notified that there were no participating Cigna physicians in Alabama and that Cigna had suggested that Carotek purchase an individual policy for him through a provider with a presence in Alabama, such as Blue Cross/Blue Shield. While Carotek was in the process of obtaining an individual policy for Purcell pursuant to Cigna's advice, Purcell informed Carotek that he had obtained his own health insurance policy. Purcell was added to his wife's family health care plan through the Public Education Employees Health Insurance Plan ("PEEHIP"). He claims that he was forced to obtain health care elsewhere because Carotek was not able to provide him with uninterrupted coverage.

In February of 2004, Purcell informed Carotek that he had learned that Cigna did, in fact, have participating physicians in

Alabama.  In response, Carotek gave Purcell the option of remaining on his wife's health insurance plan and receiving a monthly reimbursement of $289.34 (the amount Carotek pays to provide health insurance coverage for each of its other employees) or pursuing an individual Blue Cross/Blue Shield policy.  However, Carotek made clear that obtaining coverage through Cigna was not possible. Again fearing a gap in coverage should he attempt to get a separate Carotek-provided policy, Purcell elected to remain on his wife's plan and receive the reimbursement.  The reimbursement was retroactive to November 1, 2003, the date that the Primary Physician Care plan expired.  Purcell received the monthly reimbursement until he voluntarily left Carotek on April 30, 2005.

Carotek also provided its employees with a 401(k) plan through which they could make contributions towards their retirement. Carotek suspended its profit-sharing contribution to the plan on June 3, 2003.  In June of 2004, the matching contributions were reinstated for all employees, including Purcell.

*Commissions*

In addition to receiving a salary, Purcell was paid commission from Carotek for the sales he made.  Beginning in 2005, Carotek reduced the commission rates and changed the manner in which the commissions were split.  Purcell alleges that he never agreed to these changes.  He also claims that he is owed $12,645.75 in commission payments for sales that he completed in 2005 prior to

leaving the company.  Carotek contends that Purcell is not entitled to the commission payments under the terms of his employment agreement because he was not employed by the company on the date the commission payments he claims to be entitled to would have been paid in the normal course of business.

*Wellborn Cabinet Deal*

After he left Carotek, Purcell accepted employment with Prosys Information Systems ("Prosys"), one of Carotek's competitors. While working for Prosys, Purcell called on Wellborn Cabinet, Inc. ("Wellborn"), one of the customers that he had developed during his employment with Carotek.  Purcell "registered" a sale of Hewlett Packard ("HP") disk storage computer equipment to Wellborn with HP. Registration is a process by which a salesman notifies HP of a pending sale in order to obtain more favorable pricing for the customer, additional gross profit, and additional commission for the salesman.  Purcell had not actually made the sale to Wellborn at the time he made the registration with HP.  Purcell's deal with Wellborn was subsequently deregistered, and Carotek sold the disk storage equipment to Wellborn.  Purcell suspects that Carotek was involved in the deregistration of his HP sale because he received a letter from Carotek accusing him of violating the non-compete clause of his employment agreement around the same time that the deal was deregistered.  The letter from Carotek demanded that he cease and desist any further solicitation of Wellborn until October

2006, when the 18 month time limit on the non-compete clause expired.

Gerald Wylie ("Wylie"), Wellborn's Director of Information Technology, states that HP required Wellborn to choose a "preferred vendor" after the company had received price quotes for the disk storage equipment from both Carotek and Prosys. He further avers that Wellborn had a history of buying computer equipment from both Carotek and Prosys. According to Wylie, Wellborn chose Carotek as its preferred vendor because Wellborn had a longer history with Carotek. Wylie asserts that Carotek had nothing to do with Wellborn's selection of a preferred vendor.

Purcell filed his complaint in this court on April 30, 2007 stating claims of breach of contract, violation of Ala. Code § 8-24-3, and intentional interference with business relations.[2]

*Discussion*

*I. Breach of Contract*

In its motion for summary judgment, Carotek argues that Purcell's breach of contract claim with respect to the alleged denial of health insurance and 401(k) benefits should be dismissed because it is preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"). In support its argument, Carotek cites the court to *Smith v. Wynfield Development Co.*, 238 Fed.

---

[2] Purcell's claim relating to the Birmingham occupational tax has been abandoned.

Appx. 451 (11th Cir. 2007), a case with analogous facts to the case at bar in which the Eleventh Circuit found a plaintiff's state law claims to be completely preempted by ERISA.  In his response to Carotek's motion, Purcell concedes that the health insurance and 401(k) aspects of his breach of contract claim are preempted by ERISA but argues that they should be converted into ERISA claims rather than being dismissed.

It is true that state law claims subject to complete ERISA preemption are converted into ERISA claims for purposes of determining federal subject-matter jurisdiction when a case is removed from state court. *See Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998) ("Super preemption converts state law claims into federal claims for purposes of the well-pleaded complaint rule, allowing a defendant to remove the case to federal court.").  However, because this case was originally filed in this court, removal is not an issue.  Furthermore, Carotek argues that Purcell cannot state an ERISA claim because he has not exhausted his administrative remedies.  The court doubts that Purcell will be able to make out an ERISA claim but will grant him leave to amend his complaint should he believe that a cognizable claim can be stated consistent with the obligations imposed by Fed. R. Civ. P. 11. *See Cantrell v. Currey*, 407 F. Supp. 2d 1280, 1292 (M.D. Ala. 2005) (allowing plaintiff an opportunity to amend his complaint to state an ERISA claim when the court does not have enough

information to determine whether administrative exhaustion has been accomplished or should be excused).  However, the health insurance/401(k) breach of contract claim will be dismissed. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999) (stating that super preempted claims should be dismissed).

Purcell's breach of contract claim with respect to his commission payments is governed by North Carolina law under the choice-of-law clause of the employment agreement.  Under North Carolina law, the elements of a breach of contract claim are: 1) existence of a valid contract, and 2) breach of the terms of the contract. *See Parker v. Glosson*, 641 S.E. 2d 735, 737 (N.C. Ct. App. 2007).

Purcell claims that he is entitled to $12,645.75 in unpaid commission payments for sales he made from January 2005 to April 2005.  He earned $5,780.14 in commission payments in 2003 and $4,754.57 in 2004.  He also acknowledges being paid $947.24 in commission payments in 2005.  The evidence shows that Carotek has a policy of paying commissions to sales representatives after the customer pays Carotek.  Then, once Carotek receives the payment from the client, it takes approximately one month to process the payment.  The commission payment is made on the first payroll date (either the 15th or 30th of each month) after processing is complete.  The employment agreement that Purcell signed provides

7

that "no bonus or commission shall be earned by or due to Employee unless Employee is actively employed with Employer on the date any such bonus or commission is normally paid by Employer to Employee." Carotek claims that no commission payments were due to Purcell when he left the company on April 30, 2005 because his sales where still in the processing period.

Purcell acknowledges that the sales for which he claims to be owed commissions may have still been in the processing period at the time he left Carotek. Furthermore, Carotek has provided documentation setting out the status of Purcell's 2005 sales in detail. The records show that all of Purcell's orders from 2005 for which he was not paid commission were, in fact, still in the processing period at the time he left. Purcell has failed to provide any evidence to support his claim that Carotek improperly withheld his commissions payments. Therefore, a reasonable jury could not conclude that Carotek breached its employment agreement with Purcell as it relates to unpaid commission payments.

Purcell also contends that Carotek's reduction of his commission rate and modification of the way in which the commissions were split violated the terms of the employment agreement. The employment agreement does not have any specific provisions relating to commissions. The agreement only states that "[t]he position and compensation of employee shall be as agreed between the parties from time to time." Purcell states that he

never expressly agreed with the changes to the manner in which commissions were paid. However, he cannot remember whether he voiced any objections to the changes, which he says where presented on a "take it or leave it" basis. Purcell acknowledges that he continued to work for Carotek for some period of time after the commission changes took effect.

By staying with Carotek after the commission changes took effect, Purcell tacitly accepted the modifications to the commission rate and structure. *See Burden Pallet Co. v. Ryder Truck Rental, Inc.*, 271 S.E. 2d 96, 97 (N.C. Ct. App. 1980) (noting that assent to a contract can be shown through acts, conduct, or silence). "Employment contracts which are terminable at will may be modified at any time by either party with the continuance of the relationship serving as the consideration for the modification." *Fraver v. N.C. Farm Bureau Mut. Ins. Co.*, 318 S.E. 2d 340, 344 (N.C. Ct. App. 1984). Even if the commission changes somehow constituted a breach of the employment agreement, Purcell waived the breach by continuing his employment with Carotek. *See Marcoin, Inc. v. McDaniel*, 320 S.E. 2d 892, 897 (N.C. Ct. App. 1984) (noting that continuing to accept performance under contract constitutes waiver of known breach); *see also Wheeler v. Wheeler*, 263 S.E. 2d 763 (N.C. 1980). Therefore, Carotek is entitled to summary judgment on the breach of contract claim as it relates to changes to the commission structure.

---

*II. Violation of Ala. Code § 8-24-3*

Purcell also claims that Carotek's failure to pay his commissions violates Ala. Code. § 8-24-3, which states:

> A principal who fails to pay a commission as required by Section 8-24-2 is liable to the sales representative in a civil action for three times the damages sustained by the sales representative plus reasonable attorney's fees and court costs.

Carotek argues that § 8-24-3 is inapplicable to the facts of this case because it is not a "principal". Ala. Code § 8-24-1 defines a principal as:

> Any person who does all of the following:
> a. Engages in the business of manufacturing, producing, importing, or distributing a product or products for sale to customers who purchase the product or products for **resale**.
> b. Utilizes sales representatives to solicit orders for the product or products.
> c. Compensates the sales representatives, in whole or in part, by commission.

(emphasis added). Carotek claims that it is not a principal because Purcell did not sell products for resale. In order to qualify as a "sales representative" under Ala. Code § 8-24-3, one must be in the business of soliciting "orders for the purchase at **wholesale** of the product or products of the principal." *See* Ala. Code § 8-24-1 (emphasis added). "The plain and ordinary meaning of the word 'wholesale' [] denotes the sale of a product for resale." *RMC & Assocs., Inc. v. Beasley*, 958 So. 2d 879, 883 (Ala. Civ. App.

2006). The only relevant transactions for purposes of § 8-24-3 are the transactions for which the plaintiff claims he is due commissions. *See id.* at 884. Carotek has provided an affidavit from its controller stating that Carotek has never sold any products for resale in Alabama. Purcell has failed to provide any evidence to rebut the controller's assertion. He certainly has not established that he ever sold any Carotek products on a wholesale basis. Therefore, no reasonable jury could find that Carotek was a "principal" or conclude that Purcell was a "sales representative" for purposes of this claim, as those terms are defined under Alabama law. Therefore, Carotek is entitled to a judgment as a matter of law on Purcell's § 8-24-3 claim.[3]

*III. Intentional Interference with Business Relations*

Purcell contends that Carotek committed the Alabama tort of intentional interference with business relations when it allegedly caused his deal with Wellborn to be deregistered. The elements of this tort are: 1) the existence of a contract or business relation, 2) the defendant's knowledge of the contract or business relation, 3) intentional interference by the defendant with the contract or business relation, and 4) damage to the plaintiff as a result of the defendant's interference. *See S.B. v. St. James Sch.,* 959 So.

---

[3] Even if Purcell had sold Carotek products for resale, Carotek would still be entitled to summary judgment because, as discussed above, Purcell was not due any commission payments under the terms of his employment agreement. *See* Ala. Code § 8-24-2(a) ("The terms of the contract between the principal and sales representative shall determine when a commission is due.").

2d 72, 94 (Ala. 2006); *Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc.*, 850 So. 2d 259, 265 (Ala. 2002). Plaintiff must also show some evidence of fraud, force, or coercion on the part of defendant. *See Joe Cooper & Assocs., Inc. v. Cent. Life Assurance Co.*, 614 So. 2d 982, 986 (Ala. 1992).

Carotek argues that it is entitled to summary judgment on this claim because Purcell has failed to offer any evidence that it was involved in the deregistration of Purcell's HP computer deal with Wellborn. Carotek points out that Wylie, Purcell's contact at Wellborn, states that Wellborn's decision to purchase the disk storage equipment from Carotek, rather than Prosys, was based on HP's requirement that it select a preferred vendor and that Carotek had nothing to do with its selection process. Purcell's suspicion that Carotek had something to do with the deregistration of the deal is based on the fact that he received a letter from Carotek demanding that he cease any further solicitation of Wellborn around the same time that the deregistration occurred and on the fact that Carotek was later selected as Wellborn's preferred vendor and sold Wellborn the disk storage equipment. Purcell also states that he has never before seen an HP deal deregistered.

After reviewing all of the relevant evidence, the court concludes that Purcell has failed to offer proof that would allow a reasonable jury to conclude that Carotek intentionally interfered with his business relationship with Wellborn. There is no evidence

12

that it would even be possible for Carotek to deregister Purcell's HP deal, just as there is no evidence of any communication between Carotek and HP. Purcell has also failed to offer any evidence to rebut Wylie's explanation of why Wellborn ultimately decided to purchase the disk storage equipment from Carotek instead of Prosys. Purcell is entitled to speculate that Carotek was behind the deregistration of his HP deal but "[s]peculation does not create a genuine issue of material fact." *See Howard v. Or. Television, Inc.*, 2008 WL 1947094 at *1 (11th Cir. May 6, 2008) (citation and quotations omitted); *see also Hurst v. Ala. Power Co.*, 675 So. 2d 397, 400 (Ala. 1996) (finding that intentional interference claim failed because plaintiffs could provide nothing more than speculation to support their claim that defendant interfered with a contractual relationship). The temporal proximity between Purcell's receipt of the demand letter from Carotek and the deregistration of his HP deal is relevant, but it is not sufficient to create a jury question. *Cf. St. James Sch.*, 959 So. 2d at 94 (finding that involvement of chairman of private school's board of directors in investigation of student misconduct alongside school headmaster was insufficient, for purposes of summary judgment, to establish that chairman coerced headmaster into expelling students). The relevance of the temporal proximity is undermined both by the absence of any evidence of communication between Carotek and HP and by the failure to prove that it would have been

possible for Carotek to deregister another company's deal. There may have been some sort of conspiracy between Carotek and HP, but there is no evidence to support such a theory. In short, Purcell has not offered "significant probative evidence" that Carotek engaged in fraud, force, or coercion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986) (citation and quotations omitted). Because no reasonable jury could conclude that Carotek intentionally interfered with Purcell's business relationship with Wellborn, Carotek is entitled to a judgment as a matter of law on this claim.

*Conclusion*

For the foregoing reasons, the court will grant Carotek's motion for summary judgment by separate order.

DONE this 24th day of June, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE